May it please the Court, Charles DeLario for Appellant Robert Sepe. Good morning. Robert Sepe's lawyer made a mistake, but the district judge found that it was a harmless mistake and that it was not willful. Nonetheless, the district judge effectively precluded Sepe's treating physicians from offering expert testimony. We submit that that ruling was wrong. Well, he really didn't. I mean, after he reopened and got to go back in, he got in expert testimony. Well, we got in one question that was his opinion, Your Honor. Think about the context in which we find ourselves in this case. We've got a litany of objections being sustained. I laid some of them out for you in my opening brief and cited to the others. Plaintiff rests. The defense moves for judgment. The court says, oops, we should have righted the ship, I think was the district judge's language. And yet the judge didn't right the ship. By then it was too late to right the ship. It had suffered an irremedial hole in the hull. And the hole in the hull was the fact that one doctor was not available, and the other doctor who was available could only testify in a very limited way. There were three reasons why. Forgive me one second. I wanted to just get a clarification. My understanding of the reason why he wanted these doctors to testify was to talk about causation, right? That's right, Your Honor. Okay. And as I understand it, Dr. Orosek, if I'm saying his name correctly, when he came back, it was cross-examined, it was recalled, and he spoke at length about causation. Am I mistaken? Well, to the extent that Your Honor is saying spoke at length, I think that is mistaken. I think that what, in fact, happened was it was very limited, and there were continuing objections as that went on. The whole point of this ---- Let me ask you this. What more do you believe that Dr. Orosek should have been permitted to say that he was not permitted to say by the Court? He was not, for example, permitted to testify as to his differential diagnosis, which this Court has held time and again is an acceptable way of finding out what the cause of a particular injury is. In other words, a differential diagnosis is one in which the doctors eliminate various chances. The defense doctors said this just happened naturally. It happened to be coincidental with the time that the truck crushed Mr. Seppi's car into the median up in Sacramento. We say, no, that was different, and here's why. We eliminated those causes. Dr. Orosek was not allowed to say that he eliminated those causes. Those were questions that were objected to, and objections were sustained. They continued to sustain objections throughout. So is there any question in your mind that the physicians whose testimony was barred were ---- Percipient witnesses, were they not? They treated. They were percipient experts. Doctors are always experts. Wait, wait, wait. They were treated as percipient witnesses, meaning they were involved in the action. They treated your client, right? Correct. They all testified about what they observed in that connection, right? Yes, they did.  Your side did not qualify them as experts. They were not able to testify about things that came about as a result of something other than their direct personal interaction with your client. That's what the rules say, is it not? Well, the thing about the rule, Your Honor, is that the rule has this big condition precedent to it. In other words, before the district court has authorization to impose a sanction for a discovery violation, the violation has to be willful and not harmless. And yet, in this case, we have the district judge who made an express finding that it was not willful and that it was harmless. And yet, so that should have been the end of it. If that's what the rule says, the section that allows for lesser sanctions still is a subsection of that main section. Are we with me on this? So, in other words, that qualifying language applies not only to an absolute exclusion, but it applies to a lesser sanction, which I would say is what the district court ultimately did here. Well, let's just arguendo. Let's say we agreed with you and we sent this back for a new trial. Obviously, at that point, you're on notice, he's on notice, or whoever is trying it, what the problem is here. So they make very certain that you know that they're going to object to these, what, three or four doctors because they're not experts. And you say, oh, yes, they are. And then the judge is going to decide and it's going to be an abuse of discretion one way or another. And let's say that he says they're not experts. You're no better off than you were before, right? Well, I don't know. I'm not sure. Hopefully, this Court opinion would offer some guidance about that. Oh, we always do. But beyond that, Your Honor, there would be an opportunity for more discovery. After all, Mr. Seppi has engaged, has been continuing to suffer now. The district judge took over a year just deciding the motion for a new trial. Let's say there was more discovery. That doesn't address the issue of whether or not these physicians are experts. And I'm sure you know exactly what an expert is. Well, Your Honor, a doctor who offers an opinion is, doctors are experts. They're not, unless we're standing on the corner here at Seventh and Mission. I don't think so. And they get to testify under Rule 702 even though there may have been a mistake in the way they were designated. This was an honest mistake. The district judge found it was an honest mistake, and then it so hamstrung the way the doctors could testify that there was no chance in this case. This Court operates under a presumption of prejudice. There's been no showing that that prejudice has been overcome. Wait a minute. You say there's no prejudice. My recollection is that if you've got an expert, you want to know that it's an expert, and you want to take that person's deposition, you want to know exactly what they're going to say. If I recall correctly, there was none of that in writing. You didn't know what they were going to say, and they didn't have a chance to take their depositions on that basis. So it was a surprise. They didn't know. Your Honor, it was not a surprise. And that district judge found it was not a surprise. He says explicitly, and I think it's at page 3031 of the excerpts, they knew about the doctors. They got the reports on several different occasions from the doctors. The doctors weren't disclosed as a problem in the pretrial order. There were still two months left. It was a gotcha. Well, they knew there were doctors, but how do we know that they knew they were going to testify as experts, and how do we know that they knew what they were going to say as experts? They knew there were precipient witnesses, but that's different, is it not? In the context of a treating physician, I submit that it is not, as long as the doctors do not form opinions outside of their treatment of the patient. That's the very thing that you're asking for. No, I'm not. I mean, outside the treatment doesn't mean he has to turn off his brain and say, I'm not a doctor, I'm just telling you what I saw and what I did. Can I interject a question, which is, were the doctors deposed, your doctors? They did not, Your Honor. So they could have. Absolutely they could have. They had absolute knowledge. Unless the court has any more immediate questions, I'd like to save a minute and a half for rebuttal. That's fine. Answer his question, and we won't dock you for that time, so hold off. Do you have any more questions, Judge Fischer? No, that's fine. Okay, I'm sorry then. Okay, well, you saved the balance of your time then. Thank you. Good morning, Your Honors. Joseph Maskevich, appearing for the defendants in Appalese, Gordon Trucking, and Elwood Hill. I'd like to start with the first issue, and that's whether the district judge abused his discretion by limiting these treating doctors to testimony that's consistent with them being precipiate witnesses in the case. Now, counsel has stood up here and said that the district judge made a finding that my clients were not prejudiced, they were not harmed by the fact that these doctors had not been disclosed as experts and that plaintiff's counsel had not provided the types of reports that are required to be disclosed under FRC B-26. Well, at page 32 of the excerpts, here's what the district judge said. I'm going to allow the witnesses to testify as treating physicians only. However, they are precluded from providing opinion on matters outside the scope of their treatment because of the fact that no expert reports were provided to opposing counsel in a timely fashion. That is a finding. That is a requirement, is it not, under the rule? That is a requirement under FRC B-37. Now, plaintiffs have not cited that passage from the excerpts in their brief, and what they have said here today is directly contrary to it, and I don't think there's any plausible way to interpret the Court's statement other than as a finding that my clients were prejudiced by the fact that these treating physicians were not properly disclosed as experts. Let's take that one. Well, just a minute. Excuse me. Go ahead. Page 31 of the record says the Court finds that allowing these witnesses would not be a surprise, would not disrupt trial, and doesn't indicate any bad faith or willfulness. And the evidence is obviously significant to the plaintiff's case. So that's the rest of the story. Those are also statements. The Court certainly made some findings that favored the plaintiff. But the finding about whether or not the mistake or the dereliction under FRC B-37 was harmless or not appears on page 32, and it's the quote I just wrote. Let's go to the other end of that that the opposing counsel talked about, and that is that at a later point he allowed Dr. Orosek to testify and to testify about causation. Was that testimony expert testimony, or was it an amplification of his findings as a recipient witness? Well, I'm not trying to duck the question. I think it probably falls in between those two categories. Certainly some of that testimony qualified as recipient witness testimony, you know, along the lines of what the district judge had said repeatedly, and that is these physicians can come in, they can describe the findings they made, they can describe what the plaintiff told them, and they can say that, you know, what he had is consistent with being in an auto accident. Did he get into the expert area? But the district judge himself recognized that some of the testimony that Dr. Orosek gave, in fact, went beyond the type of testimony that a recipient witness is entitled to give consistent with FRC 701. And did you object? We objected, but, you know, the judge said, okay, you know, I realize your point, in effect, but at the same time this is sort of an unusual case and I'm going to allow this additional testimony. What was his reasoning? I'm sorry? What was the judge's reasoning for allowing this later testimony that bordered on expert testimony from Orosek? I don't know. I can speculate that I think that the judge felt that plaintiff's counsel had become confused during the course of the trial regarding the scope of the testimony that these treating physicians could give, and as a consequence may have dropped off some of his questioning when objections to the earlier testimony was sustained. But, in fact, even in the earlier testimony, Dr. Orosek did express causation opinions. They weren't as fully developed as they were later on when he was recalled in the reopening of the plaintiff's case. Well, what the judge said was, when he allowed him to reopen, was that the plaintiff's counsel interpreted more strictly my ruling than I intended the ruling to be, and therefore I'm going to allow him to go in as I intended the ruling to be. That's what happened, right? I think that fairly sums it up. That's what I read in the record. Well, but I also think that what the court was trying to do was draw a line between this case and cases like U.S. v. Urena and the other cases that we've cited in our brief that talk about the interplay between Rules 701 and 702 of the Federal Rules of Evidence. Federal Rule of Evidence 701 says a precipient witness cannot offer opinions that are based on scientific, technical, or other specialized knowledge. And that was really the problem that happened throughout the trial, and that plaintiff's counsel, given the ruling the court made at the outset, was trying to get into evidence opinions from these two treating doctors that were based upon their medical training, their medical experience, and their medical knowledge. Let me ask your help on something. As I look at this, it looks like plaintiff's counsel, in order to be successful, really needed to have expert testimony. I would agree with you. By failing to get that in, the case basically disappeared. The district judge, seeing that is what had happened, maybe tried to help a little bit, whether or not in compliance. What do we do with that? What's our standard of review under the circumstances? The district judge made an evidentiary ruling, I believe, that was made clear to trial counsel for the plaintiffs. I'm not sure whether it was in limine, but at least before the trial got going. How do we review this? Abusive discretion? Do we have to have a de novo review? What do we do with this? I think it is abusive discretion, Your Honor, because I think there are a whole host of circumstances at play here. One is you do have the findings that were discussed a few minutes ago about how this wasn't willful, it wasn't in bad faith, and, of course, trial counsel on my side were aware of the involvement of these two treating physicians. But at the same time, you did have a violation of the court's scheduling order. You had the issue come up on really the very first day of trial. It wasn't like there were weeks or months remaining in which discovery could have been reopened and the problem could have been easily rectified. And I would point out that in a three-week period, between the time when the defense filed that motion in limine and the time the motion was heard, Plano's counsel had done nothing. There was no provision of reports. There was no, you know, offer to immediately have these doctors sit for deposition. Any of those steps would have tended to minimize the harm that occurred. So I think that what goes to the essence of discretion here, where you have a trial a district judge making a finding that the violation of the rules created harm to the other side, you have a situation where that... Wait a minute. He said it was harmless. No, he didn't say it was harmless, Your Honor. The passage I read at page 32 of the excerpts said that there was prejudice from the absence of the required expert reports. Yes, but counsel, you didn't bother to take their deposition at all. So you had taken Orsak's deposition, and he said what he said on the corrective testimony that the judge allowed. Would you have probed as to what his basis was? Why he concluded that this was an immediate trauma, and based on his experience, that doesn't happen progressively? There would have been no reason for a deposition absent disclosure of these treating physicians as experts to get into these issues. How are you confident he wouldn't be allowed to testify as he was allowed to testify? I'm not quite sure I follow the question, Your Honor. Well, he gave an opinion. This type of herniated disc we see here is something that happens in an instant, not something that develops over time. And the system evolution really has only one common time frame, and that's the accident. Right. There certainly would have been questions about that. But at the same time, to get into that issue in a deposition as well as a trial, the testimony would have had to have addressed the arguments that the defense experts put forward, and that is the appearance of these spinal discs, as well as surrounding evidence, were indications that the accident had not caused this particular plane of spinal problems. And that's exactly the problem here, because that is classic expert testimony. It's testimony that is at the heart of Rule 702 of the Federal Rules of Evidence, and that's what the Court, in its discretion, declined to permit. But as my colleague just inquired, if I understood your answer correctly, you didn't take the depositions of any of these physicians even as precipient witnesses. Is that correct? There was no need to take their depositions as precipient witnesses, because they weren't challenging the fact that he had these conditions and needed the surgery. The causation issue was the key. And since they hadn't been disclosed as experts, there was no compelling reason why a deposition should be taken to develop expert testimony that hadn't been disclosed as expert testimony. You had two witnesses, expert witnesses, that testified that there was no causation between the collision and the subsequent problems that the plaintiff had, right? That's correct. So you were fully keyed up with regard to the issue and got to present your evidence. Well, except that we didn't know what Dr. Oracek or Dr. Lemon or Lamone would have said about the theories that our experts used to attribute the plaintiff's spinal problems to other causes, including degenerative changes over time. You didn't take their depositions in any event. And did you notify the plaintiff's attorneys about your experts and what they were going to say? Oh, absolutely. They were fully disclosed. Plaintiff's counsel decided not to take their depositions. I'm not sure why, but they have been properly disclosed, consistent with the court's scheduling order. Unless the court has any more questions. Do either of my colleagues have additional questions? No. No, thank you. I ask that the court affirm the judgment. Okay. So we'll have some rebuttal testimony. Thank you. Briefly, since that's about all I have, just to be brief. The district judge relied on Goodman v. Staples-Stupor stores, which states, a physician is exempt from the rule, the written report requirements, to the extent his treatments were formed during the course of treatment. What the defendant is trying to do is to extract all, is to preclude the doctor from testifying at all about things that were formed by virtue of his training as a doctor. And you simply cannot separate those two. Goodman cannot be read as saying, the doctor who observes in the operating room is the same as a doctor who is the witness to an automobile accident out here at 7th and Mission. Those are different. Let me ask you this, counsel, and I want to say this with respect, but I want to understand how this is being characterized. It seems to me what they're saying is that trial counsel, I don't know who it was, didn't do what was necessary, didn't do a good job to present the client's case. How do you view that? Is that an accurate statement? You might recall that my first words when I stood up here was, counsel made a mistake. He's acknowledged that mistake from the get-go. And the point of rule 37 is set forth in the advisory committee's comments to that that we've referenced in our brief to the effect that the willfulness and the harmlessness requirements that are read in conditions precedent to imposing a sanction under rule 37 have to mean something. And if the judge says it's not willful and it's harmless, then the question goes away, in our opinion. This was we're talking about, if you'll permit me, since I see my light blinking here, we're talking about, you asked about standard of review. Yes, abusive discretion is, we don't have to look very far to find a case that says that's the standard of review for evidentiary rulings. But the boundaries of discretion are what this Court decides is de novo. In other words, if we have to look and say is this outside the bounds of what the we're faced with today. Roberts. Okay. Thank you. Any other questions by my colleagues? Well, just one thing to explore. You know, I've read the record with regard to this. And, frankly, it seems to me that the trial judge was all over the place with regard to this. I mean, let's face it. What's your comment on that? Your Honor, I'm loath to criticize the trial judge, but I'm here to get him reversed, but I'm not here to criticize him. That's exactly what the problem was. And it seemed as though at some point he started to blame counsel, my trial lawyer, for misinterpreting his rulings. And you'll see in the record, as you no doubt have, that we have four different places where this ruling was visited, and it was a moving target, if you will. I believe that there was no authority to impose a sanction at all once those findings were made, that the doctors were entitled to testify as experts, even if they were only precipient witnesses, because that's what doctors are. And, finally, when we get to the fact that the pretrial order made no mention of this problem, when the pretrial order was done two months in advance of the trial, when there had been ample time had there been ‑‑ had it been raised, counsel points to my guy not doing anything in the time between the motions and limine being filed in the trial. And I look back farther and say the pretrial order superseded the scheduling order, and there was no mention of this problem when there was plenty of time to fix it. And as you correctly identified, Your Honor, this is ‑‑ this caused the trial to go awry, and we think he should be reversed. Roberts. I have another question. Please, go ahead. But the trial judge was, even though there was some vacillation, was pretty consistent in his rulings with regard to the initial presentation, or lack thereof, of Dr. Lemons and Dr. Orszag. But then it seems to me that after ‑‑ when he allowed Dr. Orszag to come back, Dr. Lemons wasn't available, that he felt that maybe he had been too restrictive, and so he was trying to balance it off. And so the question really comes down to, by allowing the testimony that he did in rebuttal to the two experts that the defense had, did he balance it off? I submit that he did not, Your Honor. One, because there was not just the limits to which he allowed the doctors to testify, it was the constant characterization of the doctors as lay witnesses. They're not testifying as experts. It was kind of diminished. I didn't say lay witnesses to the jury, though. I believe it was said to the lay witnesses. I thought they were referred to as doctors. In one instance, he corrected himself when he said experts, and then he corrected himself. I think that if we look in the record, and I don't want to take the Court's time from these other cases, you'll see that. But I would point ‑‑ I would direct your attention to the colloquy on page 30 of our opening brief, where, is there anything by way of your examination history that you provided that would suggest there's another explanation? No, sir. This is Dr. Oracek. Objection, Your Honor, beyond the scope of the treating physician sustained. That was the problem right there. And at that point, we had a problem. Thank you very much, Your Honor. Other questions? All right. Thanks to both counsel. The case just argued is submitted.
judges: Fisher, M. Smith, Piersol